NEELY *v.* INTERNATIONAL CORN PRODUCTS CORPORATION.

1. MECHANICS' LIENS—SUFFICIENCY OF CONTRACT TO SUSTAIN LIEN.
   In a suit to foreclose a mechanic's lien for material furnished in the construction of certain buildings, the conceded terms of the general contract and the facts and circumstances attending the furnishing of said material by plaintiffs and the use made of it by defendant *held*, to negative defendant's contention that the contract was not sufficiently definite to afford a basis for a lien.[1]

2. SAME—WHETHER MATERIAL FURNISHED IN GOOD FAITH QUESTION OF FACT.
   Whether labor and material furnished within the statutory period but after the contract had been substantially completed were in good faith and for the purpose of completing the contract, or colorably to revive the lien, is a question of fact.[2]

3. SAME—FINDING OF GOOD FAITH SUPPORTED.
   Where plaintiffs were never notified that there would be no further requirements, but defendant, by its agents and employees, went for the material in question, which was used in completing defendant's buildings, the finding of the court below that said material was furnished in good faith was justified.[3]

Appeal from Jackson; Parkinson (James A.), J. Submitted January 13, 1925.   (Docket No. 74.)   Decided October 1, 1925.

Bill by Wilson J. Neely and Frank Neely, copartners as Neely Brothers, against the International Corn Products Corporation and another to foreclose a mechanic's lien.   From a decree for plaintiffs, defendants appeal.   Affirmed.

[1]Mechanics' Liens, 27 Cyc. p. 67; [2]Id., 27 Cyc. p. 149; [3]Id., 27 Cyc. p. 416.

*F. M. Freeman,* for plaintiffs.

*Rich & Brown,* for defendants.

STEERE, J.   This suit was brought to foreclose a lien for material furnished under the lien law for mechanics and others (3 Comp. Laws 1915, § 14796 *et seq.,* as amended by Act No. 140, Pub. Acts 1919 [Comp. Laws Supp. 1922, § 14796 *et seq.*]).   The property against which it was filed is situated in the village of Brooklyn in Jackson county.   Plaintiffs are a firm engaged in the retail lumber and building supply business in Brooklyn, and defendant International Corn Products Company is a Michigan corporation engaged in collecting, preparing and marketing pop-corn, with its plant and principal place of business in that village.   The plants and places of business of the two companies are on adjoining properties.   The amount of indebtedness for which plaintiffs claim a lien does not appear to be in dispute.   Defendant's secretary and treasurer testified:   "So far as I have been able to ascertain all the material that the Neelys are claiming a lien for has actually been furnished to our company."   Plaintiffs' total claim with interest was $3,832.55.   The trial court deducted interest on the accounts up to time of filing the lien, amounting to $175, and items for material not satisfactorily shown subject to a lien, amounting to $80.90, and decreed foreclosure of the lien for the balance.

Defendant's counsel on appeal urge invalidity of the lien on the three grounds, that there was no contract between the parties "sufficiently definite enough in terms on which to base a valid lien," the claim of lien was not seasonably filed, and the transaction between the parties "was merely an open account and, therefore, forming no basis for a lien."

Prior to 1920 plaintiffs sold defendant the land on which its first factory building was erected, furnished

it building material and became well acquainted with its executive officers and manager in charge of the business.   Those transactions were all satisfactorily closed and are only material here as introductory to the friendly business relations which followed without written agreement.

Defendant's officials desired to enlarge the capacity of their plant and purchased adjacent land for that purpose, tore down the line fence and graded the ground as a part of their factory site.   They made plans for building another factory building to be mostly located upon it, dug the cellar for it and early in the spring of 1920 its executive officers in charge went to plaintiffs with their plans and blue prints to see if they could furnish the building material.   The interview resulted in plaintiffs agreeing to do so and they did, beginning to furnish material in April, 1920.   Plaintiffs' lumber yard directly adjoined defendant's plant site and the first material furnished when construction of the second factory began was two cars of lumber which defendant unloaded and took directly from the cars on the track as it wanted it and it often thereafter selected and took material from plaintiffs' yard as the work progressed with plaintiffs' knowledge and consent, account being kept of it.

In the enlargement and improvement of its plant defendant also built a corn-crib in 1921 directly in the rear of the new factory, with a capacity of from 45,000 to 50,000 bushels and plaintiffs furnished the building material for it.   The work of enlarging and unifying this plant after the first factory was built and paid for was continued until not long before plaintiffs' lien was filed in 1922 for material furnished by them and used by defendant in those buildings.   The first factory was 52x100 feet, the second 48x100 feet with 24-foot posts and the corn-crib was 50x75 feet with 12-foot posts.   The three buildings were near

together and connected by passage-ways, tunnels, conveyors, etc., and used in combination as a single plant unit in the business of drying, shelling, culling, putting it up in sacks or packages and in various ways preparing pop-corn for the market, one process being making in quantity and putting in packages what was called "candy-pop." The equipment and process in the three buildings were co-ordinated to that end, with one power operating the machinery in all the buildings. That all the land on which this plant was located was in one parcel is admitted in defendant's answer. All the material involved here went into those buildings in their construction and adjustment to the purposes for which they were intended and used and was furnished by plaintiffs as defendant wanted it, pursuant to a conceded verbal contract described in paragraph 3 of plaintiffs' bill as follows:

"3. That said contract or agreement was not in writing, but by parol, and negotiated and entered into by said defendant, by and through its president and its secretary and treasurer, with plaintiffs, trading as Neely Brothers, as aforesaid, and the terms of said contract or agreement, in substance, were that plaintiffs were to furnish unto defendant lumber, timbers, shingles, roofing, lath, doors, windows, mouldings and other like merchandise and building material, for the erection, construction and repair and alteration of certain warehouses, cribs and other buildings on said lands and premises, suitable for the uses and purposes of defendant, in the operation of its business; that plaintiffs should, from time to time (and monthly periods were discussed), render to defendant, bills for all materials or other things thus far furnished or supplied, for such purposes; and upon the rendition of said bills, defendant should make payment for the same. The substance and purport and effect of said negotiations and agreements being that plaintiff should render bills to defendant every 30 days, and defendant thereupon promptly make payment therefor; and such to apply to all materials or other merchandise furnished or supplied to defendant by plaintiff, from

time to time, in the construction, alteration, repair, or in any other way, of buildings on the lands and premises then and now owned by defendant, and as hereinbefore described."

This agreement is admitted in paragraph 3 of defendant's answer as follows:

"3. This defendant admits the allegations contained in paragraph 3 of said bill of complaint but denies that bills were rendered to this plaintiff every 30 days."

Section 1 of the law under which this claim of lien was filed and is sought to be foreclosed, as amended by Act No. 140, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 14796), provides in part as follows:

"Every person who shall, in pursuance of any contract, express or implied, written or unwritten, existing between himself as contractor, and the owner, * * * furnish any labor or materials in or for building, altering, improving, repairing, erecting, ornamenting or putting in any house, building, machinery, * * * shall have a lien therefor upon such house, building, * * * and other structures, and its appurtenances, and also upon the entire interest of such owner, part owner or lessee in and to the lot or piece of land, * * * upon or around or in front of which such improvement is made to the extent of the right, title and interest of such owner, part owner or lessee at the time work was commenced or materials were begun to be furnished * * * and in case of the construction of a number of buildings, foundations, cellars, basements, walls or walks under one contract upon, around or in front of, the same lot or contiguous lots for the same owner, part owner or lessee, of any interest in the real estate upon which said buildings are situated or upon, around or in front of which said well, walk or walks are built or repaired, such lien for such material or labor so furnished shall attach to all of said buildings, foundations, * * * the same as hereinbefore provided in case of a single building." * * *

Under the conceded terms of this general contract and the facts and circumstances attending the furnish-

ing of the material, and the use made of it by defendant, we see no occasion to further consider defendant's contention that the contract was not sufficiently definite to afford a basis for a lien.

Defendant's further contention that the claim of lien was not filed within the 60 days' statutory limitation finds its strongest color of support in the fact that the two buildings were practically finished as such and in use much more than 60 days before the last material was furnished by plaintiffs. The statement of claim was filed July 21, 1922. The books and testimony of plaintiffs show that items of material which defendant procured from them and used in those improvements were furnished by them on May 23, 25 and 27, on June 6, 7, 9, 14, 15 and 20, 1922.

Whether labor and material furnished within the statutory period but after the contract had been substantially completed were in good faith and for the purpose of completing the contract, or colorably to revive the lien is a question of fact. *Turner* v. *Wentworth*, 119 Mass. 459.

That rule of good faith has often been applied as the test in cases where the question of belated work or delivery of material sustaining a lien has arisen. A recent case well in point is *Ypsilanti Lumber & Coal Co.* v. *Leslie*, 218 Mich. 664, where a late order and delivery of some lumber for a coal bin was held to sustain a lien of over $2,000. This court there said, speaking through Chief Justice FELLOWS:

"It is also urged that the last item of plaintiffs' bill was furnished a considerable time after the furnishing of the great bulk of the material, and it seems to be claimed that this was not furnished in good faith. If we were satisfied that the furnishing of this material was not in good faith, for use in the building, but was made to circumvent the limitation of the statute another question would be presented. But we are not so satisfied. The lumber was ordered for a coal bin

in the basement of the house and was delivered on the premises and Mr. Leslie signed the ticket for it."

In the instant case defendant itself, by its agents and employees, went for these questioned deliveries of building material, took them to its own premises and used them there in completing and making the buildings "suitable for the uses and purposes of defendant in the operation of its business." No time limit was fixed in this oral contract. Frequent deliveries were made as called for running through the preceding months. Plaintiffs were never notified there would be no further requirements. Defendant made monthly payments at first, and some payments later from time to time but failed eventually of full payment, while plaintiffs continued to furnish the material, carrying the indebtedness as it increased to the amount shown, and only filed this lien when defendant's disclosed financial embarrassment jeopardized collection of the account. We find no occasion to disagree with the conclusion of fact by the trial court, that "there can be no question that the several items of material were furnished in good faith."

The decree will stand affirmed, with costs to plaintiffs.

CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred. McDONALD, C. J., did not sit.