J PROPES ELECTRIC COMPANY v DeWITT-NEWTON, INC

Docket Nos. 77-5173, 77-5174, 77-5175, 77-5176. Submitted December 5, 1979, at Detroit.—Decided May 5, 1980.

On November 18, 1971, Thunderbird Investment Corporation contracted with DeWitt-Newton, Inc., as general contractor to build an inn. Construction began in November, 1971. Thunderbird obtained a mortgage loan from IDS Mortgage Corporation in the sum of $4,100,000, later increased to $4,300,000, which it recorded on April 11, 1972. By the spring of 1973 there were unpaid claims of $203,000 for authorized work not included in or provided for by the construction loan. IDS refused Thunderbird Investment's request to increase the amount of the mortgage loan to cover these bills. Work began to slow down on the project and IDS authorized three construction draws, the last on or about September 14, 1973. A & A Electrical Services, a subcontractor, provided labor and materials under contract with DeWitt-Newton from the fall of 1973 until about January 2, 1974, when DeWitt-Newton was billed approximately $20,000. On March 23, 1974, A & A again provided labor at DeWitt-Newton's request and billed $328. On or about May 23, 1974, DeWitt-Newton served on Thunderbird Investment's resident agent a notice of intent to claim a lien and a statement of account and lien, which was recorded on June 6, 1974, and a document entitled "unpaid bills on Thunderbird Hilton project, Plymouth, Michigan, subject to lien". DeWitt-Newton did not serve IDS with a notice of intent to claim a lien, statement of account and lien, or statement of unpaid bills and did not name IDS as owner in its statement of account and lien filed with the Register of Deeds. Prior to the mailing and receiving of DeWitt-Newton's statement of account and lien, on April 4, 1974, upon foreclosure of the construction mortgage, IDS Mortgage Corporation received a sheriff's deed to the inn property. The sheriff's deed was recorded April 5, 1974. J. Propes Electric Company

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839.
   53 Am Jur 2d, Mechanics' Lien § 202.
[2] 53 Am Jur 2d, Mechanics' Lien §§ 151, 170-178.
[3] 53 Am Jur 2d, Mechanics' Liens § 268.

and other subcontractors brought actions to enforce mechanics' liens against the Thunderbird-Hilton Inn, which claims are now being asserted against the IDS Mortgage Corporation (IDS), the present owner of the inn, and DeWitt-Newton, Inc., the general contractor, for labor and materials supplied at the Thunderbird Hilton construction project. The cases were consolidated for trial. The Wayne Circuit Court, John D. O'Hair, J., granted judgment for all lienors against IDS. IDS appeals. Subsequent to the trial court judgment and the filing of this appeal all the subcontractors settled their claims with IDS, leaving DeWitt-Newton the sole appellee. *Held:*

1. The trial court found that work done on a construction project on March 23, 1974, was intended to further the project and the construction contract and was not simply a device to revive lien rights which had expired by statute. The court held the work was beneficial and necessary even though relatively small in comparison to the entire project. The Court of Appeals will not disturb such a conclusion clearly supported by the evidence.

2. Failure to serve a statement of account and lien upon IDS and to name IDS as owner does not render the lien ineffective even though IDS acquired the property on April 4, 1974, prior to the sending of notice of intent to claim a lien on May 23, 1974, because the parties were in direct dealing regarding the project.

3. All properly perfected mechanics' liens based on projects commenced before the filing of a construction mortgage take priority over that mortgage.

Affirmed.

1. MECHANICS' LIENS — CONSTRUCTION CONTRACTS — LABOR AND
   MATERIALS — GOOD FAITH — APPEAL.

   A trial judge's conclusion that labor and material furnished within the statutory period but after a construction contract had been substantially completed were supplied in good faith and to complete the contract rather than to revive a mechanic's lien and that the work was intended to further the project and the construction contract were findings of fact and, where supported by the proofs, will not be disturbed on appeal.

2. MECHANICS' LIENS — NOTICE OF INTENT — DIRECT DEALING —
   OWNERS — CONTRACTORS.

   A mechanic's lien is not rendered ineffective by the failure of a contractor to give an owner notice of its intent to claim a lien where the parties were in direct dealing regarding the con-

struction project; owners in direct dealing fall within the statutory direct dealing exception of the mechanics' liens statute (MCL 570.6; MSA 26.286).

3. MECHANICS' LIENS — MORTGAGES — CONSTRUCTION MORTGAGES — PRIORITY.

All properly perfected mechanics' liens based upon projects commenced before the filing of a construction mortgage take priority over that mortgage; partial ownership of the construction project does not, by itself, defeat the priority of the contractor's lien over such a construction mortgage (MCL 570.9; MSA 26.289).

*Weiner & Hauser* (by *J. Laevin Weiner)*, for defendant-appellee DeWitt-Newton, Inc.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Laurence D. Connor)*, for defendant-appellant IDS Mortgage Corporation.

Before: MacKENZIE, P.J., and V. J. BRENNAN and D. F. WALSH, JJ.

V. J. BRENNAN, J. This is an appeal from the consolidated trial of four cases in which mechanics' liens were asserted against the Thunderbird Hilton Inn by five subcontractors and the general contractor, DeWitt-Newton, defendant-appellee. The lower court entered judgment in favor of all of the lienors against IDS, defendant-appellant, the present owner of the Inn. IDS appeals. Subsequent to judgment and the filing of this appeal, the five subcontractors reached a settlement with defendant IDS. Therefore, DeWitt-Newton is the sole appellee.

This case arose out of a construction project known as the Thunderbird Hilton Inn (hereinafter the Inn). On November 18, 1971, Thunderbird Investment Corporation entered into a construction contract with DeWitt-Newton whereby De-

Witt-Newton as general contractor agreed to build the Inn. Construction began in late November of 1971.

Subsequently, Thunderbird Investment Corporation obtained a mortgage loan from IDS Mortgage Corporation in the initial amount of $4,100,000. That amount was increased to $4,300,000 and the mortgage was recorded on April 11, 1972.

As work progressed, it became apparent that the cost of completing the structure was greater than initially planned. In the spring of 1973, there were unpaid claims amounting to $203,000 for extra work authorized by the general contractor and Thunderbird Investment Corporation, as owner, but which were not included in or provided for by the construction loan with IDS.

In April or May of 1973, Thunderbird Investment Company applied to IDS for an increase in the amount of the mortgage loan to cover these bills. This request was refused. Work began to slow down on the project after May of 1973. The general contractor secured the project for the winter and, for such purposes, IDS authorized three construction draws, the last of which was made on or about September 14, 1973.

In the fall of 1973, DeWitt-Newton contracted with A & A Electrical Services. A & A performed work and provided materials until on or about January 2, 1974, at which time DeWitt-Newton was billed approximately $20,000 for these services. In March of 1974, DeWitt-Newton requested that A & A perform assorted electrical services in the bathrooms and on exit signs and to do general clean-up work on the project. The work was done on March 23, 1974, and DeWitt-Newton was billed $328.

On or about May 23, 1974, DeWitt-Newton

served Thunderbird Investment Corporation's resident agent with an intent to claim a lien, a statement of account and lien and a document entitled "unpaid bills on Thunderbird Hilton project, Plymouth, Michigan, subject to lien". The statement of account and lien was subsequently recorded in the office of the Wayne County Register of Deeds on June 6, 1974.

The Inn property was purchased April 4, 1974, through the foreclosure sale of the IDS Construction mortgage, at a sheriff's sale. The sheriff's deed to IDS was recorded on April 5, 1974, in the office of the Wayne County Register of Deeds.

Following a hearing, Judge John D. O'Hair entered a very thorough and well written opinion in favor of DeWitt-Newton Corporation and the five subcontractors. IDS appeals from two of the trial court's findings. We first address Judge O'Hair's finding that DeWitt-Newton substantially complied with the recording and notice requirements of the mechanics' lien act.

IDS asserts that the trial court's finding was erroneous on two grounds. First, IDS argues that DeWitt-Newton did not comply with MCL 570.5; MSA 26.285[1] and file its statements of account and

---

[1] MCL 570.5; MSA 26.285 provides in pertinent part:

"Every person, or his agent or attorney, whether contractor, subcontractor, material man or laborer, who wishes to avail himself of the provisions of this statute, shall make and record in the office of the register of deeds, in the county or counties in which said real estate, house, swimming pool, building, structure or improvement to be charged with the lien is situated, a just and true statement or account of the demand due him, over and above all legal setoffs, setting forth the time when such materials were furnished or labor performed, and for whom, and containing a correct description of the property to be charged with the lien, and the name of the owner, part owner or lessee, if known, which statement shall be verified by affidavit. Such verified statement or account shall be recorded within 90 days from the date on which the last of the materials shall have been furnished or the last of the labor or the last of the designing, engineering or surveying services shall have been performed or the

lien within 90 days after furnishing the last labor and materials on the project pursuant to its contract with Thunderbird Investment Corporation. DeWitt-Newton mailed its statement of account and lien on or about May 23, 1974. Since the last work on the project was done on March 23, 1974, by A & A Electrical Company, DeWitt contends that the statement of account and lien was timely filed. IDS does not dispute that A & A performed work on the project on March 23, 1974, but argues that the work was not done in good faith but merely to revive DeWitt's lien rights. Whether labor and material furnished within the statutory period but after the contract has been substantially completed were furnished in good faith and for the purpose of completing the contract or to revive the lien is a question of fact. *Neely v International Corn Products Corp,* 232 Mich 81, 86; 205 NW 96 (1925). *Sacchetti v Recreation Co,* 304 Mich 185, 190; 7 NW2d 265 (1943).

The work done on March 23, 1974, consisted of repair work on the exit lighting and in the second floor bathrooms. This work was done at the request of DeWitt-Newton and was part of A & A's October, 1973, contract. A & A billed DeWitt-Newton $21,889.05 for work done from October, 1973, to January 2, 1974. The bill for the March 23rd work was $328. Although IDS alleges that the work performed after September, 1973, was for the purpose of sale or to avoid bond liability, this allegation is not supported by the record. Rather it appears the work was done to attract additional financiers for the project. Admittedly, the work on the project was slowing down due to lack of money. However, it appears that the Thunderbird

last day of use of any rented or leased equipment by the person claiming the lien."

Investment Company was seeking new money to bolster the project. A & A's testimony that the March 23rd work was done under the original contract is uncontroverted. There was no allegation that the work was not done, that it did not benefit the project or that it was done in an unworkmanlike manner. Judge O'Hair concluded that:

"The Court is satisfied that the work done at the project in the latter part of March, 1974, was intended to further the project and the construction contract, and was not simply a device to afford DeWitt-Newton the opportunity to record its statement of account and lien within the time period prescribed by MCLA 570.5. Though the amount of work done at the project was relatively small in comparison to the entire project, it was beneficial and necessary."

We decline to disturb this conclusion since it was clearly supported by the proofs. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976), *Smith v Michigan State Accident Fund,* 403 Mich 201, 204; 267 NW2d 909 (1978).

IDS next asserts that DeWitt-Newton's failure to serve its statement of account and lien upon IDS and to name IDS as an owner on same renders DeWitt-Newton's lien ineffective in light of MCL 570.5; MSA 26.285,[2] and MCL 570.6; MSA 28.286.[3] IDS argues that since it purchased the Inn on

[2] See footnote 1.

[3] MCL 570.6; MSA 26.286 provides in pertinent part:

"Every person recording such statement or account as provided in the preceding section, except those persons contracting or dealing directly with the owner, part owner or lessee of such premises, shall within 10 days after the recording thereof, serve on the owner, part owner or lessee of such premises, if he can be found within the county or in case of his absence from the county, on his agent having charge of such premises, within the county wherein the property situated, a copy of such statement or claim; * * * before any subsequent proceedings shall be taken for the enforcement of such lien."

April 4, 1974, at a foreclosure sale and obtained a sheriff's deed, its equitable interest in the property, *Gerasimos v Continental Bank,* 237 Mich 513, 519-520; 212 NW 71 (1927), *Gage v Sanborn,* 106 Mich 269; 64 NW 32 (1895), makes it an "owner" within the meaning of the mechanic's lien act.[4] While this argument is persuasive, we do not here determine its merit since resolution of this issue is controlled by the "direct dealing" language of MCL 570.6; MSA 26.286.[5] It is undisputed that IDS and DeWitt-Newton were in direct dealings regarding the Thunderbird Inn project. As such, if IDS were an "owner" it fell within the statutory direct-dealing exception and DeWitt-Newton was not required to give IDS notice of its intent to claim a lien. *Burton Drywall, Inc v Kaufman,* 402 Mich 366; 263 NW2d 249 (1978).

For the reasons stated we conclude that there was substantial compliance with the various requirements of the mechanic's lien act in the present case.

IDS's final argument is that the trial court erred in finding that DeWitt-Newton's mechanics' lien was superior to IDS's construction mortgage. We disagree.

It is clear that all properly perfected mechanics' liens based upon projects commenced before the filing of a construction mortgage take priority over that mortgage. MCL 570.9; MSA 26.289 provides in pertinent part:

---

[4] MCL 570.29; MSA 26.309 defines owner as follows:

"For the purpose of this act the words 'owner, part owner or lessee' shall be construed to include all the interest, either legal or equitable, which such person may have in the real estate upon which the improvements contemplated by this act are made, including the interest held by any person under contracts of purchase, whether in writing or otherwise."

[5] See footnote 3.

"The several liens herein provided for shall continue for 1 year after such statement or account is recorded in the office of the register of deeds, and no longer unless proceedings are begun to enforce the same as hereinafter provided, and such liens shall take priority as follows:

\* \* \*

"Third, They shall be preferred to all other titles, liens or incumbrances which may attach to or upon such building, machinery, structure or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said building or buildings, erection, structure or improvement".

*Williams & Works, Inc v Springfield Corp,* 76 Mich App 541; 257 NW2d 160 (1977), *Wallich Lumber Co v Golds,* 375 Mich 323; 134 NW2d 722 (1965).

In this case the parties do not dispute that the general contractor entered into a contract with Thunderbird Investment Corporation to construct the Inn on November 18, 1971, that work on the Inn began in November, 1971, and that defendant IDS's construction mortgage was not recorded until April 11, 1972. Based on these facts, DeWitt-Newton's mechanics' lien should take priority over IDS's construction mortgage.

IDS argues, however, that since DeWitt-Newton owned 20% of the outstanding stock of Thunderbird Investment Company, owner of the Thunderbird Inn, DeWitt-Newton was in effect a partial owner of the Inn. As such, IDS contends, DeWitt-Newton is precluded by *Heide v Societatea Romana,* 262 Mich 394; 247 NW 702 (1933), from claiming that its mechanics' lien has priority over IDS's construction mortgage. We decline to read *Heide* as broadly as IDS urges.

In *Heide,* plaintiffs undertook in October, 1928, to construct an assembly hall for the defendant

Society. By May of 1929, while construction was in progress, the Society ran out of funds. "Anxious to procure a loan upon the property in order to proceed with the work and pay subcontractors, material men, and laborers, as well as plaintiffs", *id.,* 395, the Society and plaintiffs made joint but unsuccessful efforts to procure financing. The parties then agreed that if plaintiffs could obtain a loan, "the society would execute a deed to them and they would execute a mortgage to secure an issue of bonds and then reconvey the property to the society, subject to the mortgage". *Id.* A written agreement was prepared, the parties continued to work in concert and induced a lender to take a mortgage for $50,000 and to advance monies from time to time thereunder to pay subcontractors and the plaintiffs. The mortgage was duly executed and various sums advanced, the building was completed, and then plaintiffs filed a lien for the balance of the contract price and for extras. This lien excluded all sums paid subcontractors, materialmen and laborers by the mortgagee. On appeal, plaintiffs claimed priority of the lien because the mortgage was subsequent to the commencement of work under the building contract.

Finding that plaintiffs took an active part in inducing the lender to take the mortgage and presented its own sworn statement of the amount due under the contract to the lender, the Supreme Court held that "loss of otherwise priority *may* arise where contractors, in effect, by affirmative action, induce or procure a mortgage to be given for their benefit and participate in the proceeds". *Id.,* 400. (Emphasis added.)

We agree with DeWitt-Newton's analysis that the basis of the *Heide* decision is the agreement between the owner and the contractor, the active

participation of the contractor in seeking the construction loan, its presentation of a sworn statement to the construction lender directly to induce the making of that loan and the totality of the circumstances surrounding the three parties.

While the general contractor in *Heide* was also an owner of the project, this fact was incidental to the issue considered by that Court. We do not read *Heide* as stating that simply by virtue of being an owner of the project the general contractor-owner loses the priority of his mechanics' lien to a construction mortgagee. Nor do we find IDS's argument that since DeWitt-Newton did not include $203,000 worth of "extras" due the subcontractors in the sworn statements or certificates of the contract-buyer submitted to IDS, DeWitt-Newton is now estopped from asserting its mechanics' lien as superior to the mortgage lien. This $203,000 arose in the spring of 1973 and represented unpaid claims for extra work authorized by DeWitt-Newton and the owner, Thunderbird Investment Corporation, but were not included in or provided for by the construction loan with IDS. Although Thunderbird Investment Company applied to IDS for an increase in the amount of the mortgage loan to cover these bills, IDS refused the request. Clearly, IDS was not prejudiced by this statement since it not only refused to grant the requested increase, but both the owner and IDS admitted knowledge of the $203,000 extras prior to presentation of the sworn statement. Additionally, we note that since the statement only covered sums paid out under the mortgage, the inclusion of the $203,000 would have served no purpose.

Aside from the argument made as to the $203,000, there is no allegation that DeWitt-Newton affirmatively induced or procured IDS to give a

mortgage for its benefit. Absent a finding of factual circumstances comparable to those found in *Heide,* we are unwilling to extend the holding of that case to cover the instant one. Here, the trial court correctly applied the general priority rule and found DeWitt-Newton's mechanics' lien superior to IDS's mortgage.

Affirmed. Costs to be paid by appellant.