Justice SOTOMAYOR, concurring.
I write separately to clarify my understanding of the pre-emption principles that should guide this Court's analysis of the Federal Power Act and that underpin its conclusion in these cases.
The process through which consumers obtain energy stretches across state and federal regulatory domains. The Federal Power Act authorizes the States to regulate *1300 energy production. 16 U.S.C. § 824(b). It then instructs the Federal Government to step in and regulate wholesale purchases and energy transportation. § 824(a). Finally, it allows the States to assume control over the ultimate sale of energy to consumers. § 824(b). In short, the Federal Power Act, like all collaborative federalism statutes, envisions a federal-state relationship marked by interdependence.
Pre-emption inquiries related to such collaborative programs are particularly delicate. This Court has said that where "coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a less persuasive one." New York State Dept. of Social Servs. v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973). That is not to say that pre-emption has no role in such programs, but courts must be careful not to confuse the "congressionally designed interplay between state and federal regulation," Northwest Central Pipeline Corp. v. State Corporation, Comm'n of Kan., 489 U.S. 493, 518, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989), for impermissible tension that requires pre-emption under the Supremacy Clause.
In this context, therefore, our general exhortation not to rely on a talismanic pre-emption vocabulary applies with special force. See Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941) ("This Court ... has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference. But none of these expressions provides an infallible constitutional test or an exclusive constitutional yardstick" (footnote omitted)).
I understand today's opinion to reflect these principles. Using the purpose of the Federal Power Act as the "ultimate touchstone" of its pre-emption inquiry, Altria Group, Inc. v. Good, 555 U.S. 70, 76, 129 S.Ct. 538, 172 L.Ed.2d 398 (2008), rather than resting on generic pre-emption frameworks unrelated to the Federal Power Act, the Court holds that Maryland has impermissibly impeded the performance of one of FERC's core regulatory duties. Ensuring "just and reasonable" wholesale rates is a central purpose of the Act. See 16 § 824d(a). Pursuant to its mandate to set such rates, FERC has approved the PJM Interconnection capacity auction as the proper mechanism to determine the "just and reasonable" rate for the sale of petitioner CPV Maryland, LLC's energy at wholesale. Ante, at 1297. Maryland, however, has acted to guarantee CPV a rate different from FERC's "just and reasonable" rate and has thus contravened the goals of the Federal Power Act. Ibid. Such actions must be preempted. Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 487 U.S. 354, 374, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988) ("States may not regulate in areas where FERC has properly exercised its jurisdiction to determine just and reasonable wholesale rates"). The Court, however, also rightly recognizes the importance of protecting the States' ability to contribute, within their regulatory domain, to the Federal Power Act's goal of ensuring a sustainable supply of efficient and price-effective energy. Ante, at 1299.
Endorsing those conclusions, I join the Court's opinion in full.
Justice THOMAS, concurring in part and concurring in the judgment.
The Court concludes that Maryland's regulatory program invades the Federal Energy Regulatory Commission's (FERC)
*1301 exclusive jurisdiction over interstate wholesale sales of electric energy. Ante, at 1297 - 1298. I agree that the statutory text and framework compel that conclusion, and that Maryland's program therefore cannot stand. Because the statute provides a sufficient basis for resolving these cases, I would not also rest today's holding on principles of implied pre-emption. See, e.g., ante, at 1297 - 1298. For that reason, I join the Court's opinion only to the extent that it rests on the text and structure of the Federal Power Act (FPA), 41 Stat. 1063, as amended, 16 U.S.C. § 791a et seq.
The FPA divides federal and state jurisdiction over the regulation of electricity sales. As relevant here, the FPA grants FERC the authority to regulate "the sale of electric energy at wholesale in interstate commerce." § 824(b)(1). That federal authority over interstate wholesale sales is exclusive. See, e.g., Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 966, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986) (recognizing that Congress "vested" in FERC "exclusive jurisdiction" and "plenary authority over interstate wholesale rates"); Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 487 U.S. 354, 377, 108 S.Ct. 2428, 101 L.Ed.2d 322 (1988) (Scalia, J., concurring in judgment) ("It is common ground that if FERC has jurisdiction over a subject, the States cannot have jurisdiction over the same subject").
To resolve these cases, it is enough to conclude that Maryland's program invades FERC's exclusive jurisdiction. Maryland has partially displaced the FERC-endorsed market mechanism for determining wholesale capacity rates. Under Maryland's program, CPV Maryland, LLC, is entitled to receive, for its wholesale sales into the capacity auction, something other than what FERC has decided that generators should receive. That is a regulation of wholesale sales: By "fiddling with the effective ... price" that CPV receives for its wholesale sales, Maryland has "regulate[d]" wholesale sales "no less than does direct ratesetting." FERC v. Electric Power Supply Assn., 577 U.S. ----, ----, 136 S.Ct. 760, 787, 193 L.Ed.2d 661 (2016) (Scalia, J., dissenting) (emphasis deleted) (addressing analogous situation involving retail sales). Maryland's program therefore intrudes on the exclusive federal jurisdiction over wholesale electricity rates.
Although the Court applies the FPA's framework in reaching that conclusion, see ante, at 1297 - 1298, it also relies on principles of implied pre-emption, see, e.g., ante, at 1297 - 1298. Because we can resolve these cases based on the statute alone, I would affirm based solely on the FPA. Accordingly, I concur in the judgment and I join the Court's opinion to the extent that it holds that Maryland's program invades FERC's exclusive jurisdiction.