71 So.3d 70 (2011)
John K. VREELAND, etc., Petitioner,
v.
Danny FERRER, etc., et al., Respondents.
No. SC10-694.
Supreme Court of Florida.
July 8, 2011.
Rehearing Denied September 13, 2011.
*71 Joel D. Eaton of Podhurst Orseck, P.A., Miami, FL, and the Law Firm of Wagner, Vaughan and McLaughlin, P.A., Tampa, FL, for Petitioner.
Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy and Ford, P.A., Fort Lauderdale, FL, for Respondent.
*72 LEWIS, J.
Petitioner John K. Vreeland seeks review of the decision of the Second District Court of Appeal in Vreeland v. Ferrer, 28 So.3d 906 (Fla. 2d DCA 2010), on the basis of express and direct conflict with the decision of this Court in Orefice v. Albert, 237 So.2d 142 (Fla.1970). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS AND PROCEDURAL HISTORY
Danny Ferrer entered into an agreement to lease an airplane from Aerolease of America, Inc. (Aerolease) for a period of one year. On January 14, 2005, after taking off from an airport in Lakeland, Florida, the plane crashed. The pilot, Donald Palas, and his passenger, Jose Martinez, were killed in the crash. John Vreeland, in his capacity as administrator ad litem and personal representative of the Martinez estate, filed a wrongful death action against Aerolease.[1] In support of the action, Vreeland first contended that Aerolease, as owner of the aircraft, was liable and responsible for the negligence of Palas in the operation and inspection of the aircraft. Second, Vreeland asserted that prior to the transfer of the aircraft to Ferrer, Aerolease negligently performed inspections and maintenance on the aircraft such that it was in a defective condition, which directly contributed to the crash. Lastly, Vreeland claimed that Aerolease published false information concerning the condition of the aircraft, which Ferrer relied upon. According to Vreeland, the actual condition of the aircraft significantly contributed to the crash.
Aerolease moved for summary final judgment, contending that a provision of federal law, 49 U.S.C. § 44112 (1994), preempted Florida law. Section 44112, titled "Limitation of Liability," provides, in pertinent part:
(b) Liability.A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage on land or water only when a civil aircraft, aircraft engine, or propeller is in the actual possession or control of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of
(1) the aircraft, engine, or propeller; or
(2) the flight of, or an object falling from, the aircraft, engine, or propeller.
49 U.S.C. § 44112 (1994). The trial court held a hearing and, on September 25, 2007, entered a summary final judgment in favor of Aerolease. The trial court noted that under Florida's "dangerous instrumentality" doctrine, the owner or lessor of an aircraft is vicariously liable for the negligent conduct of a pilot. However, the court concluded that 49 U.S.C. § 44112 preempted Florida law and, because Aerolease was not in actual possession or control of the aircraft at the time of the crash, the company was not responsible under the provisions of the federal statute.
Vreeland filed a motion for reconsideration, asserting that the trial court's decision on vicarious liability effectively overruled the 1970 decision of the Florida Supreme Court in Orefice v. Albert, 237 So.2d 142 (Fla.1970). In Orefice, the Court held that an airplane was a dangerous instrumentality, and a wrongful death action could properly proceed against the co-owner of an airplane on the basis of vicarious liability. See 237 So.2d at 145-46. Vreeland also asserted that Aerolease was in possession and control of the aircraft at the time of the *73 alleged negligent maintenance and inspection and, therefore, federal law did not preempt this claim. The trial court denied reconsideration.
On appeal, the Second District affirmed the decision of the trial court to the extent it held that the vicarious liability claim was preempted by federal law, but reversed the entry of the summary final judgment on the claim of negligent maintenance and inspection. See Vreeland v. Ferrer, 28 So.3d 906, 912-13 (Fla. 2d DCA 2010).
With regard to vicarious liability, the Second District examined the legislative history of the statutory predecessors to 49 U.S.C. § 44112, and it concluded that the provision was enacted to shield an owner or lessor of a civil aircraft from vicarious liability under state law whenever the aircraft is not under his or her control. See 28 So.3d at 909. The Second District distinguished this Court's decision in Orefice on two bases. First, the district court reasoned that the 1970 decision did not mention a predecessor statute to section 44112 that was in effect at the time that decision was issued. See id. at 912. The absence of discussion concerning that predecessor statute, section 1404, in Orefice led the district court below to conclude that the parties failed to raise the issue of preemption before the Florida Supreme Court or the lower courts in Orefice. See id. Second, the district court explained:
The Orefice court's ruling that the dangerous instrumentality law imposed vicarious liability on owners of aircraft was based in part on its observation that Chapter 330, Florida Statutes (1970), reflected "a specific policy by the State of Florida to license and otherwise see after aircraft safety." Orefice, 237 So.2d at 145. The Florida statutes addressing aircraft safety have since been repealed.
Id.
With regard to the negligent inspection and maintenance claim, however, the Second District reversed the entry of the summary final judgment. See id. at 913. The court below was of the opinion that the purpose of section 44112 was to shield an owner or lessor from the negligence of another when the aircraft is not in the possession or control of the owner or lessor. See id. The statute was not intended to shield owners or lessors from negligence while in control or possession of the aircraft. See id. The district court concluded that the claim that Aerolease was negligent with regard to maintenance and inspection while the aircraft was in its possession was not preempted by federal law and, therefore, the trial court erred when it entered summary final judgment on this claim. See id.
Vreeland filed a petition with this Court seeking review of the Second District's decision on the basis that it expressly and directly conflicts with the decision of this Court in Orefice, and we accepted review.

ANALYSIS
Whether state law is preempted by federal law is a pure question of law that is subject to de novo review. See Talbott v. American Isuzu Motors, Inc., 934 So.2d 643, 644 (Fla. 2d DCA), review denied, 946 So.2d 1071 (Fla.2006).

Florida LawThe Dangerous Instrumentality Doctrine
The dangerous instrumentality doctrine has been a part of Florida common law for almost one hundred years. In 1920, the Florida Supreme Court considered whether a corporation could be held responsible for the negligence of an operator who injured another while driving an automobile owned by the corporation. See Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 631 (1920). In its analysis, the *74 Court articulated what is now known as the dangerous instrumentality doctrine and concluded that the doctrine is applicable to motor vehicles:
The principles of the common law do not permit the owner of an instrumentality that is not dangerous per se, but is peculiarly dangerous in its operation, to authorize another to use such instrumentality on the public highways without imposing upon such owner liability for negligent use. The liability grows out of the obligation of the owner to have the vehicle ... properly operated when it is by his authority on the public highway.
....
An automobile being a dangerous machine, its owner should be responsible for the manner in which it is used; and his liability should extend to its use by any one with his consent. He may not deliver it over to any one he pleases and not be responsible for the consequences.
Id. at 632, 635 (quoting Anderson v. So. Cotton Oil Co., 73 Fla. 432, 74 So. 975, 978 (1917); Ingraham v. Stockamore, 63 Misc. 114, 118 N.Y.S. 399, 401 (N.Y.Sup.Ct. 1909)).
In a subsequent decision, this Court held that an individual who rented vehicles as part of a business was responsible for the negligence of the driver who rented the vehicle. See Lynch v. Walker, 159 Fla. 188, 31 So.2d 268, 271 (1947). In Susco Car Rental System of Florida v. Leonard, 112 So.2d 832 (Fla.1959), this Court determined that a car rental agency was responsible under the dangerous instrumentality doctrine for the operation of a motor vehicle where the vehicle was driven by a person not named in the rental contract, even though the individual who rented the car had agreed in the contract to be the sole driver. See id. at 835 ("The fact that the owner had a private contract ... with the renter cannot make such restrictions a bar to the rights of the public. The restrictions agreed upon do not change the fact that the automobile was being used with the owner's consent.").
Recently, the Fifth District Court of Appeal reiterated the concept and framework of the dangerous instrumentality doctrine and the purpose behind it:
The doctrine imposes strict liability upon the owner of a motor vehicle by requiring that an owner who "gives authority to another to operate the owner's vehicle, by either express or implied consent, has a nondelegable obligation to ensure that the vehicle is operated safely." Aurbach v. Gallina, 753 So.2d 60, 62 (Fla.2000). The doctrine is intended to foster greater financial responsibility to pay for injuries caused by motor vehicles because the owner is in the best position to ensure that there are adequate resources to pay for damages caused by its misuse. Id. at 62. The doctrine also serves to deter vehicle owners from entrusting their vehicles to drivers who are not responsible by making the owners strictly liable for any resulting loss.
... Liability of the owner is said to be "strict" because a plaintiff need not prove that an owner negligently entrusted the vehicle to its operator for liability to attach. However, the doctrine is distinguished from strict liability for ultra-hazardous activity, because the plaintiff must prove some fault, albeit on the part of the operator, which is then imputed to the owner under vicarious liability principles. Id.

Burch v. Sun State Ford, Inc., 864 So.2d 466, 470 (Fla. 5th DCA) (footnote omitted), review dismissed, 889 So.2d 778 (Fla.2004).
It was a federal court in 1951 that first applied Florida's dangerous instrumentality *75 doctrine to aircraft. Specifically, in Grain Dealers National Mutual Fire Insurance Co. v. Harrison, 190 F.2d 726 (5th Cir.1951), an airplane passenger filed an action against the company that owned the aircraft for injuries suffered due to the negligence of the pilot. See id. at 727. The Fifth Circuit Court of Appeals noted that there was no state decisional law that applied the doctrine to aircraft. See id. at 729.[2] However, the federal appellate court reviewed state judicial decisions that applied the dangerous instrumentality doctrine to motor vehicles and ultimately concluded:
Our examination of these authorities and the reasoning underlying their pronouncements leave no room for doubt that, under Florida law, by which we are here governed, the airplane should be similarly classified with the automobile as "a dangerous agency when in operation." We can perceive no logical basis for any difference of classification which would authorize a holding that the rule of "dangerous agency" or "dangerous machine," which the Florida law applies to automobiles in operation, should be relaxed in the case of an airplane. This rule imposes liability upon the defendant for the acts and omissions of the pilot of its airplane which the jury was authorized to, and did, find constituted negligence.

Id. at 729-30 (emphasis supplied). Subsequently, this Court in Orefice v. Albert held that "an airplane, like an automobile, is a dangerous instrumentality when in operation." 237 So.2d at 145. This Court concluded that the owner of an airplane who was not in control of the aircraft at the time of a crash that caused the death of a passenger could be held vicariously liable for the negligent conduct of the co-owner pilot. See id. at 146. It is clear that the dangerous instrumentality doctrine applies to aircraft in Florida.

Federal Preemption Law
With regard to federal preemption, the United States Supreme Court has stated:
"Pre-emption may be either express or implied, and `is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95 [103 S.Ct. 2890, 77 L.Ed.2d 490] (1983) (quoting Fidelity Federal Savings & Loan Assn. v. De [de] la Cuesta, 458 U.S. 141, 152-153 [102 S.Ct. 3014, 73 L.Ed.2d 664] (1982), in turn quoting Jones v. Rath Packing Co., 430 U.S. 519, 525, [97 S.Ct. 1305, 51 L.Ed.2d 604] (1977)); see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-843 [104 S.Ct. 2778, 81 L.Ed.2d 694] (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress" (footnote omitted)). We "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Park `N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 194 [105 S.Ct. 658, 83 L.Ed.2d 582] (1985).
FMC Corp. v. Holliday, 498 U.S. 52, 56-57, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Where a federal law does not expressly preempt state law, preemption may be inferred only where

*76 the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 [67 S.Ct. 1146, 91 L.Ed. 1447] (1947). Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Ibid.

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 [83 S.Ct. 1210, 10 L.Ed.2d 248] (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, [312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)].
Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (citation omitted).
The United States Supreme Court has further explained that preemption is very carefully scrutinized when it touches upon areas traditionally governed by state law:
[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated ... in a field which the States have traditionally occupied," Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 [67 S.Ct. 1146, 91 L.Ed. 1447] (1947), we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Ibid.

Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). In situations where Congress has legislated in an area traditionally relegated to the states, the United States Supreme Court has determined that, where the text of a preemption clause is susceptible of more than one possible interpretation, courts ordinarily apply the interpretation that disfavors preemption. See Altria Group, Inc. v. Good, 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008).
Tort law is one area that is clearly and traditionally regulated by the states. See, e.g., Desiano v. Warner-Lambert & Co., 467 F.3d 85, 94 (2d Cir.2006) (holding that state-based tort liability falls within a state's prerogative to regulate matters of health and safety, which "is a sphere in which the presumption against preemption applies, indeed, stands at its strongest"), aff'd by an equally divided court sub nom. Warner-Lambert Co., LLC v. Kent, 552 U.S. 440, 128 S.Ct. 1168, 170 L.Ed.2d 51 (2008) (per curiam); Abbot v. American Cyanamid Co., 844 F.2d 1108, 1112 (4th Cir.1988) ("The presumption against preemption is even stronger against preemption of state remedies, like tort recoveries, when no federal remedy exists." (citing Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 251, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984))). Consistent with this principle, the federal statutes that govern aviation commerce and safety contain a savings clause which provides: "A remedy under this part is in addition to any other remedies *77 provided by law." 49 U.S.C. § 40120(c) (1994).[3]
At issue in this case is whether the federal law currently codified at 49 U.S.C. § 44112 preempts Florida state law with regard to the liability of aircraft owners under the dangerous instrumentality doctrine and, if it does, how broadly the scope of that preemption covers.

49 U.S.C. § 44112 and its Legislative History
Title 49, section 44112, of the United States Code currently provides:
§ 44112. Limitation of liability
(a) Definitions.In this section
(1) "lessor" means a person leasing for at least 30 days a civil aircraft, aircraft engine, or propeller.
(2) "owner" means a person that owns a civil aircraft, aircraft engine, or propeller.
(3) "secured party" means a person having a security interest in, or security title to, a civil aircraft, aircraft engine, or propeller under a conditional sales contract, equipment trust contract, chattel or corporate mortgage, or similar instrument.
(b) Liability.A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage on land or water only when a civil aircraft, aircraft engine, or propeller is in the actual possession or control of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of
(1) the aircraft, engine, or propeller; or
(2) the flight of, or an object falling from, the aircraft, engine, or propeller.
There is no express preemption language within this clause. Cf. 49 U.S.C. § 41713(b)(1) (1994) ("Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.").
Therefore, if Florida law with regard to aircraft owner/lessor liability is preempted by section 44112, that preemption can only be implied because there is no express preemption. To determine whether and to what extent section 44112 may impliedly preempt Florida law, it is necessary to review and understand the legislative history behind this provision. According to the United States Supreme Court, Congressional purpose is "the ultimate touchstone in every pre-emption case." Altria Group, 129 S.Ct. at 543 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). This is especially true given the presumption against preemption of traditional state law remedies. The Eleventh Circuit Court of Appeals has held that where federal law preempts an area historically relegated to the states, even a statement of express preemption must be narrowly interpreted:
"[A] strong presumption exists against finding express preemption when the *78 subject matter, such as the provision of tort remedies to compensate for personal injuries, is one that has traditionally been regarded as properly within the scope of the states' rights." Taylor v. General Motors Corp., 875 F.2d 816, 823 (11th Cir.1989) (citation omitted). Thus, express preemption clauses must be construed narrowly.
Irving v. Mazda Motor Corp., 136 F.3d 764, 767 (11th Cir.) (alteration in original) (footnote omitted), cert. denied, 525 U.S. 1018, 119 S.Ct. 544, 142 L.Ed.2d 452 (1998). Accordingly, we conclude that any implied preemption of state law must also be narrowly construed.
In 1948, Congress enacted section 504 of the Civil Aeronautics Act, the original federal provision limiting the liability of aircraft owners and lessors. See Act of June 16, 1948, Pub.L. No. 482-656, 62 Stat. 470. The reasons for enacting section 504 were articulated in great detail in the House Report that accompanied the legislation. Due to the importance of the report in the determination of Congressional intent, we must analyze its full text, which provides:
This bill proposes to insert after section 503 of the Civil Aeronautics Act of 1938 a new section 504, as follows:
Sec. 504. No person having a security interest in, or security title to, any civil aircraft under a contract of conditional sale, equipment trust, chattel or corporate mortgage, or other instrument of similar nature, and no lessor of any such aircraft under a bona fide lease of thirty days or more, shall be liable by reason of such interest or title, or by reason of his interest as lessor or owner of the aircraft so leased, for any injury to or death of persons, or damage to or loss of property, on the surface of the earth (whether on land or water) caused by such aircraft, or by the ascent, descent, or flight of such aircraft or by the dropping or falling of an object therefrom, unless such aircraft is in the actual possession or control of such person at the time of such injury, death, damage, or loss.
Provisions of present Federal and State law might be construed to impose upon persons who are owners of aircraft for security purposes only, or who are lessors of aircraft, liability for damages caused by the operation of such aircraft even though they have no control over the operation of the aircraft. This bill would remove this doubt by providing clearly that such persons have no liability under such circumstances.
The relief thus provided from potential unjust and discriminatory liability is necessary to encourage such persons to participate in the financing of aircraft purchases.
The provisions of present law above referred to are section 1(26) of the Civil Aeronautics Act of 1938 and section 5 of the Uniform Aeronautics Act.
Section 1(26) of the Civil Aeronautics Act of 1938 reads as follows:
(26) "operation of aircraft" or "operate aircraft" means the use of aircraft for the purpose of air navigation and includes the navigation of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this Act.
Section 5 of the Uniform Aeronautics Act is in force in at least 10 States and Hawaii.[4] That section reads, in part, as follows:

*79 The owner of every aircraft which is operated over the lands or the waters of this State is absolutely liable for injuries to persons or property on the land or water beneath, caused by the ascent, descent, or flight of the aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured, or of the owner or bailee of the property injured. If the aircraft is leased at the time of the injury to persons or property, both owner and lessee shall be liable, and they may be sued jointly or either or both of them may be sued separately.
This provision thus imposes absolute liability on owners of aircraft for damage caused on the surface of the earth. It is susceptible of a construction which would impose liability upon any person registered as owner, even though he holds title only as security under a mortgage or similar security instrument or as lessor under an equipment trust. If such interpretation were adopted, the security title holder could become liable for extensive damages on the surface caused by the operation of the aircraft. An owner in possession or control of aircraft, either personally or through an agent, should be liable for damages caused. A security owner not in possession or control of the aircraft, however, should not be liable for such damages. This bill would make it clear that this generally accepted rule applies and assures the security owner or lessee, that he would not be liable when he is not in possession or control of the aircraft.
The limitation with respect to leases of 30 days or more, in case of lessors of aircraft, was included for the purpose of confining the section to leases executed as a part of some arrangement for financing purchases of aircraft. Any lease in connection with any such arrangement would almost certainly be for a period in excess of 30 days.
1948 U.S.C.C.A.N. 1836-37 (emphasis supplied). The language clearly references airplane owner/lessor liability for damages to persons and property that are on the surface of the earth.
In 1958, section 504 was incorporated into the newly enacted Federal Aviation Act. See Fed. Aviation Act, Pub.L. No. 85-726 § 504, 72 Stat. 731, 774 (1958). It was codified in the United States Code as 49 U.S.C. § 1404. In 1959, section 1404 was amended to broaden the protections of the provision to include not only owners or lessors of aircraft, but also owners and lessors of aircraft engines and propellers. See Act of July 8, 1959, Pub.L. No. 86-81 § 2, 73 Stat. 180. Section 1404 then remained unchanged until 1994 when, as part of a revision of Title 49 of the United States Code, which governs transportation, it was merely reworded and recodified without substantive change as section 44112(b). See Act of July 5, 1994, Pub.L. No. 103-272 § 1, 108 Stat. 745, 1167. The House Report that accompanied the 1994 recodification specifically stated that the purpose of the revision to Title 49 was "to revise, codify, and enact without substantive change certain general and permanent laws related to transportation ... and to make other technical improvements in the Code." 1994 U.S.C.C.A.N. 818 (emphasis supplied). Given that the House Report expressly states that the revision of Title 49 was not intended to affect any substantive change, the Congressional intent behind the enactment of section 504 in 1948 still remains.

*80 The Preemptive Scope of Section 44112

Every version of the owner/lessor liability federal statute since its enactment in 1948 has referenced injury, death, or property damage that has occurred on land or water, or on the surface of the earth. At no time has Congress removed this geographic requirement from the federal statute. With regard to statutory interpretation, the United States Supreme Court has stated that it is the duty of a court "to give effect, if possible, to every clause and word of a statute." United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)). To fulfill this directive, we must determine the Congressional intent embodied in this very specific geographic language.
The words "on land or water" or "on the surface of the earth" may be read to specify that the limitation on liability only applies to death, injury, or damage that is caused to people or property that are physically on the ground or in the water. Specifically, the limitation on liability would apply only to individuals and property that are underneath the aircraft during its flight, ascent, or descent. Under this interpretation, Aerolease would not benefit from any limitation articulated by section 44112 because Martinez was not "on land or water" at the time of the crashhe was a passenger inside the aircraft.
To determine if such interpretation is consistent with Congressional intent, we return to the circumstances that led to the enactment of section 504 in 1948. The House Report that accompanied section 504 criticized a law in effect in multiple states that imposed "absolute liability on owners of aircraft for damage caused on the surface of the earth." 1948 U.S.C.C.A.N. 1836, 1837 (emphasis supplied). As previously stated, section 5 of the Uniform Aeronautics Act (UAA) allowed absolute liability for "injuries to persons or property on the land or water beneath." Id. at 1836-37 (emphasis supplied). The specific language of the UAA that imposed absolute liability for injuries to people or property beneath the plane supports the more narrow interpretation of the phrase "on land or water" in current section 44112. Indeed, the title of section 5 of the UAA was "Damage on Land."
Although Aerolease contends that Congress intended for section 44112 to cover any injuries, death, or damages caused by a plane striking the surface of the earth, Vreeland is correct that the Uniform Aeronautics Act contained a separate section that addressed injuries to airmen or passengers who were in the plane at the time of the incident. In fact, as demonstrated below, the UAA viewed the tort rights of individuals who were aboard the aircraft quite differently from those of people on the ground beneath the aircraft:
§ 4. Lawfulness of flight.Flight in aircraft over the lands and waters of this State is lawful ... unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. ...
§ 5. Damage on land.The owner of every aircraft which is operated over the lands or the waters of this State is absolutely liable for injuries to persons or property on the land or water beneath, caused by the ascent, descent or flight of the aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured, or of the owner or bailee of the property injured. If the aircraft is leased at the time of the injury to persons or property, both owner and lessee shall be liable, *81 and they may be sued jointly or either or both of them may be sued separately. An aeronaut who is not the owner or lessee shall be liable only for the consequences of his own negligence. The injured person, or owner or bailee of the injured property, shall have a lien on the aircraft causing the injury to the extent of the damage caused by the aircraft or objects falling from it.
§ 6. Collision of Aircraft.The liability of the owner of one aircraft to the owner of another aircraft, or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air, shall be determined by the rules of law applicable to torts on land.
§ 7. Jurisdiction Over Crimes and Torts.All crimes, torts, and other wrongs committed by or against an aeronaut or passenger while in flight over this State shall be governed by the laws of this State....
Unif. Aeronautics Act §§ 4-7, 11 U.L.A. 160-64 (1938) (emphasis supplied). Thus, while the UAA imposed absolute liability for injury, death, or damage that occurred on the land or water beneath, the rights of airplane passengers and crew members were governed by the law of the state that adopted the UAA.
Congress was indisputably aware of the Uniform Aeronautics Act when it enacted section 504 in 1948. When Congress drafted language to limit the liability of airplane owners and lessors, it only addressed liability toward persons or property "on the surface of the earth." Section 504 did not expressly address airplane passengers or airmen, even though there were separate sections of the UAA that did so. Had Congress intended to preempt the provisions of the UAA that governed the tort rights of passengers and airmen, it could have easily modified the language of section 504 to not solely address injuries or damage that occur "on the surface of the earth (whether on land or water)." We conclude that by adopting a federal law that specifically referenced damages or injuries that occur on the surface of the earth, the 1948 Congress did not intend to preempt state law with regard to injuries to passengers or aircraft crew.
Further, section 1404/44112 is not the only federal aviation statute that references persons and property that are on the ground, i.e., beneath the aircraft in the course of its ascent, descent, or flight. Subsection (b) of current 49 U.S.C. § 40103 provides:
(b) Use of airspace.(1) The Administrator of the Federal Aviation Administration shall develop plans and policy for the use of the navigable airspace and assign by regulation or order the use of the airspace necessary to ensure the safety of aircraft and the efficient use of airspace. The Administrator may modify or revoke an assignment when required in the public interest.
(2) The Administrator shall prescribe air traffic regulations on the flight of aircraft (including regulations on safe altitudes) for
(A) navigating, protecting, and identifying aircraft;
(B) protecting individuals and property on the ground;

(C) using the navigable airspace efficiently; and
(D) preventing collision between aircraft, between aircraft and land or water vehicles, and between aircraft and airborne objects.
(Emphasis supplied.) This provision was adapted from and enacted as part of the 1958 Federal Aviation Act. See Fed. Aviation Act, Pub.L. No. 85-726 § 307, 72 Stat. 731, 749-50 (1958). Thus, at a time when the airplane owner/lessor liability provision *82 was incorporated into the FAA, Congress expressed an interest in protecting people and property on the ground. Hence, to not afford meaning to the words "on land or water" in current section 44112, this Court would not only be acting contrary to congressional intent, but would also be failing to give meaning to every word in section 44112. This would be completely contrary to the directive of the United States Supreme Court in Menasche. See 348 U.S. at 538-39, 75 S.Ct. 513.

Decisional LawPreemption
Decisions with regard to how section 44112/1404 should be interpreted are varied. Some cases narrowly hold that the enactment of the preemption provision in section 1404 did not demonstrate that Congress had preempted the entire field of aviation law. For example, in Rogers v. Ray Gardner Flying Service, Inc., 435 F.2d 1389 (5th Cir.1970), upon which Aerolease relies in support of its preemption claim, plaintiffs Mr. and Ms. Rogers filed a wrongful death action against Ray Gardner Flying Service for the death of their daughters in a plane crash. See id. at 1390-91. The plaintiffs conceded that no cause of action existed against the corporation for the alleged negligent conduct of the pilot under Oklahoma state law. See id. at 1391 ("The Oklahoma Supreme Court has expressly held that the negligence of the bailee of an airplane may not be imputed to the bailor."). However, the claimants asserted that 49 U.S.C. § 1301(26) (1964) operated to create a cause of action for vicarious liability against the corporation under Oklahoma law. See id. at 1391. Section 1301(26) defined what constitutes the "operation of aircraft":
(26) "Operation of aircraft" or "operate aircraft" means the use of aircraft, for the purpose of air navigation and includes the navigation of aircraft. Any person who causes or authorizes the operation of aircraft, whether with or without the right of legal control (in the capacity of owner, lessee, or otherwise) of the aircraft, shall be deemed to be engaged in the operation of aircraft within the meaning of this chapter.
Id. at 1390 n. 1. The plaintiffs relied upon a provision in section 1404 to support their contention that section 1301(26) preempted state law and created a cause of action not authorized under Oklahoma state law. They asserted that "Congress purposefully considered the question of pre-empting state laws on bailment of airplanes and concluded that only those persons exempted by Section 1404 should not be held liable as operators." Id. at 1392.
The Fifth Circuit Court of Appeals disagreed with this reverse limitation/ cause of action assertion. The court concluded that, had Congress intended to preempt state tort law of bailments to broaden liability with regard to the operation of aircraft, "it was fully capable of making that intent clear directly and not by indirection requiring the circuitous reasoning plaintiffs find themselves driven to employ." Id. at 1393 (emphasis supplied). The Fifth Circuit expressed "disbelief, in the absence of clearer evidence, that Congress would undertake to alter the tort laws of numbers of states in such oblique fashion." Id. at 1394 (emphasis supplied) (citing Rosdail v. Western Aviation, Inc., 297 F.Supp. 681, 684-85 (D.Colo.1969) ("We disagree ... that Congress intended to alter common law principles with a definitional section of a regulatory scheme.")). The Fifth Circuit ultimately held that section 1301(26) did not preempt state tort law with regard to aircraft liability, and the plaintiffs' cause of action was governed strictly by Oklahoma state law. See id. at 1392, 1394.
Other courts have concluded that airplane owner/lessors are not responsible for *83 any injuries if they are not in control or possession of the aircraft at the time of the incident. For example, in Matei v. Cessna Aircraft Co., 35 F.3d 1142, 1148 (7th Cir. 1994), also relied upon by Aerolease, the Seventh Circuit Court of Appeals affirmed a trial court entry of a summary final judgment that held an aircraft owner who leased the aircraft to another company could not be held liable under either section 1404 or Illinois bailment law for the death of the pilot. However, in affirming the trial court decision, the Seventh Circuit provided a limited text of section 1404 as follows: "[N]o lessor of any [civil] aircraft... under a bona fide lease of thirty days or more, shall be liable by reason of... his interest as lessor or owner of the aircraft ... so leased, for any injury to or death of persons ... caused by such aircraft unless such aircraft ... is in the actual possession or control of such person at the time of such injury, death, damage or loss." Id. at 1144 (alterations in original). Thus, the Seventh Circuit in Matei relied upon an incomplete version of section 1404 that omitted any reference to the actual words of the statute, which stated injuries or damage that occur "on land or water," when it affirmed the determination of the district court that federal law exempted an owner/lessor from vicarious liability for the death of a pilot in a plane crash.
Finally, well-reasoned decisional law exists which expressly supports the limited preemption that we deem correct with regard to section 44112. In Storie v. Southfield Leasing, Inc., 90 Mich.App. 612, 282 N.W.2d 417, 418 (1979), aff'd sub nom. Sexton v. Ryder Truck Rental, Inc., 413 Mich. 406, 320 N.W.2d 843 (1982), an aircraft owned by Southfield Leasing crashed and a passenger on the plane, Charles Storie, was killed. At the time of the crash, the aircraft was leased to Lebow Associates, for whom Storie worked. See id. at 418. The administrator of Storie's estate filed a wrongful death action against Southfield. See id. Southfield filed a motion for summary judgment contending that 49 U.S.C. § 1404 (1970) preempted Michigan state law with regard to a lessor's liability for airplane collisions. See id. The trial court entered summary final judgment on a different basis (the doctrine of lex loci delecti). See id. The administrator appealed the summary judgment, and Southfield Leasing cross-appealed with regard to the failure of the trial court to grant summary judgment on the issue of preemption. See id. The Michigan Appellate Court rejected Southfield Leasing's preemption argument and applied a reasoning which is consistent with our decision today:
We do conclude that M.C.L. s. 259.180a(1); M.S.A. s. 10.280(1) does, in part, conflict with the provisions of 49 U.S.C. s. 1404. The latter statute shields a lessor of an airplane from tort liability for any injury or loss suffered "on the surface of the earth." See Rogers v. Ray Gardner Flying Service, Inc., supra, and McCord v. Dixie Aviation Corp., 450 F.2d 1129, 1130 (C.A.10, 1971). To the extent that M.C.L. s. 259.180a(1); M.S.A. s. 10.280(1) would impose liability for such an injury or loss upon the lessor of the airplane, the statute directly conflicts with Federal law and is preempted by it.
A close reading of 49 U.S.C. s. 1404 leads us to conclude, however, that the Federal statute is inapplicable to the situation presented under the circumstances of this case. In the present case the injury occurred inside the aircraft and not upon the surface of the earth. We do not read 49 U.S.C. s. 1404 as preventing the states from imposing liability upon the owners of airplanes in these circumstances.

*84 Therefore, we conclude that M.C.L. s. 259.180a(1); M.S.A. s. 10.280(1) is not entirely preempted by the Federal legislation. As written, the Michigan statute imposes liability upon aircraft owners both for injuries incurred on the ground and those suffered inside the aircraft. Although liability for the former species of injury must yield to the Federal mandate, the liability imposed by the statute for the latter type of injury may be severed from the statute without doing injustice to the legislative intent.
Id. at 420-21 (emphasis supplied). The Michigan Supreme Court affirmed the lower court with little discussion directed to the holding of the Michigan appellate court with regard to federal preemption. See Sexton v. Ryder Truck Rental, Inc., 413 Mich. 406, 320 N.W.2d 843, 847 n. 2 (1982) ("Like the Court of Appeals in Storie, we reject defendant's argument and find that plaintiffs action is governed by the applicable Michigan statute."). See also In re Lawrence W. Inlow Accident Litigation, No. IP99-0830-C, 2001 WL 331625 at *9, *16 (S.D.Ind. Feb. 7, 2001) (unreported decision) (concluding that, "consistent with Storie's reasoning," section 44112 preempted claim against sublessor of aircraft for death of passenger who was struck and killed by a helicopter blade after he disembarked the helicopter).
We conclude that the preemption analysis in Storie correctly tracks the legislative history of section 44112, and is also consistent with both the well established presumption against federal preemption of state tort remedies and the savings clause that is now codified in section 40120(c) of the United States Code, which preserves "any other remedies provided by law." Therefore, we follow the reasoning of the Michigan Court of Appeals.

Application to this Case
Florida's dangerous instrumentality doctrine imposes vicarious liability upon owners and lessors of aircraft, even where the aircraft is not within their immediate control or possession at the time of the loss. To the extent that the doctrine applies to injuries, damages, or deaths that occur on the surface of the earth, the doctrine conflicts with, and is therefore preempted by, section 44112. However, because the death of Martinez occurred while he was a passenger in a plane that crashednot on the ground beneath the planethe wrongful death action filed by Vreeland is not preempted by section 44112. Rather, Florida's dangerous instrumentality doctrine applies, and the Second District erroneously affirmed the summary final judgment entered by the trial court in favor of Aerolease on the basis of federal preemption.[5]
The dissent contends that our holding today "defies reality." Dissenting op. at 85. However, the dissent fails to provide any legal reasoning or precedent in support of this assertion other than the erroneous decision of the Second District below and completely disregards the fifty years of congressional history that surrounds this federal provision. Rather than presenting a basis for disagreement that is grounded in sound legal analysis and historical consideration, the dissent simply turns a blind eye to the well-documented *85 creation and evolution of what is now section 44112 and the longstanding presumption against preemption of traditional state law remedies. It is certainly easy to proclaim that a legal analysis is absurd or nonsensical merely by pretending the extensive history in support of that analysis does not exist. If reality is defied in this case, the dissent is the culprit for willful blindness and a lack of cogent legal analysis.

CONCLUSION
Accordingly, we quash the decision of the Second District in Vreeland to the extent it holds that Vreeland's vicarious liability claim against Aerolease, pursuant to the dangerous instrumentality doctrine of Florida, is preempted by 49 U.S.C. § 44112. Further, we approve our decision in Orefice. The case is remanded for further proceedings consistent with this opinion.
It is so ordered.
PARIENTE, QUINCE, LABARGA, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion.
CANADY, C.J., recused.
POLSTON, J., dissenting.
I agree with the Second District that federal law preempts the application of Florida's dangerous instrumentality doctrine to Vreeland's claim that Aerolease, as the owner of the aircraft, is vicariously liable for the pilot's negligence. See Vreeland v. Ferrer, 28 So.3d 906, 912 (Fla. 2d DCA 2010).
The relevant portion of the Federal Aviation Act, 49 U.S.C. § 44112, provides as follows:
(b) Liability.A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage on land or water only when a civil aircraft, aircraft engine, or propeller is in the actual possession or control of the lessor, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of
(1) the aircraft, engine, or propeller; or
(2) the flight of, or an object falling from, the aircraft, engine, or propeller.
Based upon the plain meaning of this language, "the federal statute [shields] the owner or lessor of a civil aircraft from liability for the negligence of others committed when the aircraft was not in the owner's or lessor's possession or control." Vreeland, 28 So.3d at 910. Therefore, like the Second District, I believe federal law preempts Florida's dangerous instrumentality doctrine here.
By narrowly construing the "on land or water" language of the statute, the majority holds that the federal statute only preempts Florida law when the loss of life occurs to someone on the ground beneath the aircraft. See majority op. at 80, 84. However, as the Second District noted, this reasoning does not "explain why an airplane crash does not cause an injury on the surface of the earth regardless of whether the injured person was in the airplane or standing on the ground." Vreeland, 28 So.3d at 911. The majority's assertion that the federal statute does not apply because "Martinez was not `on land or water' at the time of the crashhe was a passenger inside the aircraft"[6] defies reality. Even though Martinez was in the aircraft when it hit land, his death occurred "on land," not in the aircraft prior to contact with land. The majority's view is *86 inconsistent with the plain meaning of the statute, specifically the plain meaning of "on land."[7]
Therefore, I respectfully dissent.
NOTES
[1] A number of other defendants, including Danny Ferrer, were named in the action but those defendants are not relevant to the issue presented here.
[2] The Eleventh Circuit Court of Appeals was not created until 1981. Prior to that time, Florida was under the jurisdiction of the Fifth Circuit Court of Appeals.
[3] The predecessor to section 40120(c) provided: "Nothing contained in [the Federal Aviation Act] shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." 49 U.S.C. § 1506 (1988). Congress expressly stated that a recodification of the federal aviation statutes that occurred in 1994, which included renumbering section 1506 as section 40120(c), was not intended to substantively change those statutes. See 1994 U.S.C.C.A.N. 818.
[4] Hawaii did not become a state until 1959, more than ten years after the enactment of section 504. See http://hawaii.gov/lrb/ hndbook/hbk2.html (last visited Mar. 8, 2011).
[5] Aerolease also challenges the decision of the Second District to reverse the trial court award of summary final judgment on the negligent maintenance and inspection claim. During the direct appeal, however, the parties agreed to utilize appendices instead of filing an original record with the district court. Therefore, this Court lacks a full record of the trial court proceedings. In the absence of a complete record upon which to evaluate the parties' assertions, and the apparent presence of disputed issues of material fact as reflected in the briefs, we decline to address this issue.
[6] Majority op. at 80.
[7] See Carcieri v. Salazar, 555 U.S. 379, 129 S.Ct. 1058, 1063-64, 172 L.Ed.2d 791 (2009) ("[W]e must first determine whether the statutory text is plain and unambiguous. If it is, we must apply the statute according to its terms.") (citations omitted); Caminetti v. United States, 242 U.S. 470, 485-86, 37 S.Ct. 192, 61 L.Ed. 442 (1917) (explaining that "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms" and explaining that "[s]tatutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them"); see also Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 808 n. 3, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute.").